KENT PAPER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14437.  Promulgated August 22, 1928.

*Solomon Goodman, Esq.*, for the petitioner.
*George S. Herr, Esq.*, for the respondent.

STERNHAGEN: The Commissioner determined a deficiency of $1,199.68 in income and profits tax for 1919 against the petitioner and in doing so disallowed $49,775 of the invested capital which the taxpayer claimed on its return. The disallowance of the Commissioner was based upon a failure of evidence to establish the taxpayer's claim at that time that $49,775 was the value of intangibles called good will and watermark acquired for stock at the time of organization. The taxpayer comes to the Board upon a petition alleging that the $49,775 represents several items, (1) dandy rolls, $2,400; (2) organization expenses, watermark experiments, artist's services, traveling expenses, $5,000; (3) sales commissions to stockholders earned but not withdrawn; and (4) good will and trademark, as evidenced by earnings of a predecessor corporation prior to reorganization and earnings of the petitioner thereafter. The material allegations were denied by the respondent.

The proof is, in our opinion, entirely insufficient to establish any of the alleged invested capital in excess of the $28,316.33, which apparently has already been allowed by respondent. A single witness was called, who is no longer connected with the petitioner, and who testified as best he could from memory. We gather from the evidence that the petitioner's business was probably that of a dealer in paper. The business had been organized originally about 1914 by a corporation with about half a dozen stockholders. In August, 1917, this corporation was dissolved and simultaneously a new corporation was organized. Prior to this apparent reorganization the witness had acquired more than half the stock of the old corporation, and after the reorganization he seems to have owned more than half the stock in the new corporation. If these facts be true, as the witness indicated, the whole case might be disposed of under section 331, Revenue Act of 1918, which provides that the new corporation in such circumstances may receive no greater invested capital by reason of the value of any of the transferred assets than that of its predecessor.

But, passing that point, there is too little in the evidence from which to build up an invested capital under section 326. As to the dandy rolls, the evidence is confusing. The witness at one time said that he purchased in behalf of the corporation, at the time of reorganization (whether before or after does not appear), 12 or 16 dandy rolls at $150 apiece. In describing these as cylindrical devices for

imprinting watermarks in paper in the course of manufacture, he left it doubtful as to whether these devices were owned by the petitioner or simply assigned to it by the paper manufacturer as a method of having its individual watermarked paper for sale. But assuming that they were purchased for cash, the evidence is entirely silent as to whether the cash had already been included in invested capital by the respondent. If so, of course it should not be included again when used for the purchase of dandy rolls. At another time the witness indicated that the dandy rolls had been turned in for stock or at least that when the stock was issued the dandy rolls were regarded as among the assets received. It may be that a clear view of the facts would require an inclusion of their value in invested capital, but the evidence falls short of proving that the respondent has been in error.

The round figure of $5,000 is said to represent various kinds of preorganization expenses. No attempt has been made to segregate the items which are included within this approximate figure, and the witness explained it as traveling expenses, artist's expenses, organization, and the expense of inducing paper mills to supply the petitioner's needs. No facts are given which would justify characterizing any of these matters as property paid in for stock or shares as required by section 326, or even calling them capital in a more general sense. The so-called commissions which are alleged to have been earned and left in the business in exchange for capital stock are likewise too vaguely stated to be included. It appears that ordinarily in this trade commissions of 10 per cent are paid by dealers to salesmen. The witness and another secured from one printer approximately $40,000 or $50,000 of business. They were stockholders of the petitioner and took no commissions. This, in our opinion, does not establish that the individuals had any right to commissions or that having a right they relinquished it in exchange for stock, and we can not from the evidence find that this was property paid in for stock or shares.

*Judgment will be entered for the respondent.*